The first case on the calendar for argument is Leidig v. Buzzfeed, Inc., No. 19-851. I think that the argument from Buzzfeed is that the entire team believed that the stories that they were, the story that they published was true. Yes, and I've actually conceded that they did believe it. So this, the issue of actual malice only is peripheral in this case because the plaintiffs are not public figures. So actual malice only applies in plaintiffs' argument for, would apply in an argument for punitive damages. And our argument is that gross negligence would be, so assuming gross negligence is a liability, we concede that it's a newsworthy story. So Shapido would apply and gross negligence would be the standard. They set out to, with a preconceived notion of what they believed, they ignored evidence like the fact that they discovered that this Chinese woman in the KFC was a true story. They just took it out when they discovered that a story everybody thought was fake wasn't fake. And they accepted supposed debunks that aren't debunks. It's not a debunk. Am I going over my time? Do I have? I want to make sure Judge Park has got the answer he wanted. Oh, okay. Yeah, and the argument is, and this Court just reaffirmed that in the case against the New York Times, Palin v. Times, that it is not a sine qua non of actual malice to doubt what you're publishing. If you don't doubt it, but the lack of doubt comes from a bias against the person you're writing about, combined with a lack of investigation. They didn't really do any journalism here. They didn't do investigation. They accepted a debunk from Snopes that isn't really a debunk. They accepted a supposed debunk that a kid. I think we're straying here from. Yeah. No, I think I've got your answer. Okay. You have two minutes of rebuttal. We'll hear from Ms. Bolger, please. Good morning. May it please the Court, I'm Catherine Bolger on behalf of BuzzFig. This is a strange defamation case, and it's not because of the two-headed goat or the cabbage walking. It's a strange defamation case because the plaintiff, who concedes as he must that they bear the burden of establishing every single element of their claims, have admitted to 215 of the 216 facts on which BuzzFeed bases its claim. That concession, coupled with the plaintiff's failure to offer any kind of evidence of falsity, means that the decision below should be affirmed, both on the grounds that the plaintiff cannot demonstrate the material falsity of the article. That's because I take it your adversary just interposed a general denial to the detailed statement of facts that you advanced in support of your motion. That's correct, Judge Jacobson. I feel like you probably know the Sell case better than any of us and probably also know how to pronounce it. I've always said Sell, so I apologize if that's incorrect. Mr. Wise pronounced it differently. I don't know how to pronounce it. Okay. In the Sell case, this Court did hold that bland, cryptic claims of falsity supported by the credibility of witness might be sufficient to establish falsity in other cases, but the First Amendment demands more. And that is what we have here with a little bit of a kicker. First of all, I do think Sell stands for the proposition that the First Amendment particularly requires more than just a bald denial. But even if it didn't, this Court has held in other circumstances, in the D'Amico case, that conclusory allegations or speculation and bald denials can't simply create an issue of fact. But here the affidavit is not just a bald factual assertion. It has been irredeemably discredited. If you look at the joint appendix, the declaration is at 81 in the joint appendix. In that appendix, in that declaration, Mr. Leidig swears CEN had correctly reported that young people in China were reported to be walking cabbages out of loneliness because the persons quoted in the CNN story were real people and the quotes correct. But in his deposition, Mr. Leidig testified that his colleague John Fang had gotten those quotes. John Fang then testified that he didn't get those quotes. He didn't even work at CEN when that article was written. He also testified that he had no idea where the quotes came from. And Mr. Leidig ultimately testified that he had actually fabricated the database that showed that Mr. Fang wrote that story for the purposes of this litigation. That claim is simply discredited. If you want to talk about another story. And where is that concession that he makes? So if you the declaration is at 81. I have that. You said that he swore that he had fabricated. You know, this case has taught me the importance of the statement of undisputed material facts, and that is what I would point you to. And that's at the joint appendix 987 through 1024, I believe. And I'm actually talking about a series of statements in the statement of undisputed facts, which go from paragraphs 131 through 135, and that's at joint appendix 108. So you were treating as a concession the failure to respond point by point to the statement of facts? There was no — there was no — it was not that there was a failure to respond. He, in fact, articulated that he did not dispute the 215 facts in it. And I have that record site. Sorry. It's a bigger record than I'd expect. He admits it's at the joint appendix 2506. The plaintiff says, And I will also tell you that everything I just read is Mr. Leidig's sworn testimony during his deposition, so he could not contest it. In short, Your Honor, it's not just that there's a declaration that is based on no facts. It is a declaration that has been wholly discredited.  In addition to these — in this whole list of 215 facts, Mr. Leidig testified over and over again that CNN had no reason — no basis to know where the quotes came from in the articles. He does, as Judge Park pointed out, concede that 10 of the articles are not the basis of his claim. That's at the statement of material facts at 195. He does not dispute the accuracy of 10 of the CEN stories discussed in the article. And if you look at paragraph 196, Mr. Leidig testified he didn't know where the quotes came from in the Mr. Bieber story. He doesn't know where the quotes came from in the double castration story. He can't specifically point to where the quotes came from in the twin cheating story. He doesn't have any evidence of where the quotes came from in the underwear thief story. And the thing — the one I think is really telling is that when asked directly, as you sit here today, are you aware of any evidence that would establish that BuzzFeed claims that these quotations were written by CEN are false, he responded, nope, I don't have any evidence. The plaintiff has simply failed to carry his burden of demonstrating material falsity because he has said he cannot prove that the CEN reporting is accurate. And just briefly as — It's inaccurate. He can't prove that the reporting is inaccurate. Sorry. It's a complicated one. He can't prove that the CEN reporting is accurate such that the BuzzFeed reporting would be inaccurate, yes. And as to the question of whether Mr. Leidig is a public figure, we're not, of course, arguing that Mr. Leidig is an all-purpose public figure. We are arguing that he is a limited-purpose public figure. That's the Lerman test that this Court set out. Does he put himself forward with respect to these public stories? He certainly has, Your Honor. First of all, as a background, he wrote a series of articles in a newspaper he calls the Press — the Paper of Record, the Press Gazette, which set forth his entire business model and how he'd switched to viral news. Then when BuzzFeed reached out for him to comment on the story, a thing they did so often that Mr. Leidig testified what a pain in the neck it was that BuzzFeed kept contacting him. Instead of responding to BuzzFeed, he called his buddy at the Press Gazette and got the Press Gazette to plant a story about the BuzzFeed article before it was written. So Mr. Leidig's piece about the BuzzFeed story got published first, and he did it in an effort to manipulate the situation such that BuzzFeed's story was forced to be published on a Saturday night where Mr. Leidig said he could control the traffic. So in this case, he certainly injected himself specifically into this story by manipulating the narrative, and then he published a book about it and kept for the rest of the time that this lawsuit has been pending, feeding stories to the Press Gazette about this lawsuit, in fact, of the probably won tomorrow. And that is how this has always happened. So he has very much injected himself into this controversy, and he's shown no evidence at all of actual malice, and certainly not clear and convincing evidence of actual malice. Again, Judge Jacobs, I keep getting back to Sell, but your dissent in Sell said correctly that it's Hornbook law that common law malice does not constitute subjective awareness of probable falsity. And, in fact, the Palin case does nothing to change that. What the Palin case says essentially is that when there is bias, and that bias causes the defendant to ignore a piece of evidence in that story, in that case it was another article published by the Times, then you might be able to demonstrate clear and convincing evidence at the close of discovery. Here, there's no such evidence of one bit of evidence that BuzzFeed ignored. There is no evidence that plaintiffs don't fabricate stories anywhere in the record of this case, not at the time the article was published and not now. So regardless of the fact that there's a couple bits of loose language in some text sent around the BuzzFeed newsroom, that doesn't amount to a purposeful avoidance of some particular fact. If it you're not saying, though, that if by chance they published a nonfabricated story, that would establish their case. There are too many layers here. I thought you were saying there's no evidence that they published true stories. There is. Plaintiffs have brought forward no evidence that established that they have ever published a single true story. Right? Having said as much, as Judge Park pointed out, they've conceded that ten of them were false. And in fact, in the statement of material facts, there's actually testimony from Mr. Leidig in which he conceded that four of those stories that he did not challenge, we actually got it wrong and BuzzFeed got it right. That in and of itself should defeat this case because that would be evidence of the substantial truth of the article. All right. Thank you very much. Thank you. Mr. Wise, you have two minutes of rebuttal. With respect to bias, with respect to proving reckless disregard for the truth, the rule of Palin and the case that Palin cites, which is Judge Leisure's opinion in the Church of Scientology affirmed Church of Scientology v. Bihar. The rule is that bias combined with a failure to investigate can equal reckless disregard. The bias here is obvious. We quote the BuzzFeed reporters talking to each other about CEN and Michael Leidig. I won't quote all of it here because some of it is off color, but they describe themselves as having so much hatred for CEN and Mr. Leidig. So the bias is clear. The reason they had the bias is because they didn't know what CEN actually does. They didn't know that CEN has reporters in China and in Russia and in Spanish speaking reporters. So their assumption is that every time we had a quote from someone that somebody else had, didn't have, that it was made up because they didn't know. For example, the two-headed goat. They didn't know that we have reporters in China. The two-headed goat. The issue is whether there was a farmer who was correctly quoted. Am I correct? Yeah, it's an interesting aspect of the case because it's an example of what's called libel by innuendo. What BuzzFeed published were true statements. The statement being, as I recall it, a Chinese news agency couldn't get the farmer to talk, and yet a Vienna-based agency somehow did despite being located far away. That's the owner of the goat. Those are true statements published sarcastically in order to induce somebody to think, oh, no, that couldn't be true because they're in Vienna. In fact, the innuendo is exploded and destroyed by the fact that CEN has reporters in China that speak Chinese and could see on television because it's now undisputed that the farmer went on television to talk about the goat, that that's how they could get the quotes from the farmer. And again, there's a hyperlink to a Chinese story with the farmer and the goat. So it's clear that we did not make up that story. And as to what we may have conceded, I don't agree that by not mentioning everything, every factual assertion in the story that we conceded the facts, we argue that they don't support the general libel that we do this We don't make up stories. Ben Smith, the editor of BuzzFeed, when I asked him about hoaxing, he said everyone gets hoaxed. It's a part of doing journalism. And so the fact that – Thank you, Mr. Weiss. Your time has expired. Thank you very much. I think we have the arguments. We'll take the matter under advisement.